**LEVI & KORSINKSY LLP**
ADAM C. MCCALL (State Bar No. 302130)
amccall@zlk.com
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Telephone: (213) 985-7290
Facsimile: (866) 367-6510

**LEVI & KORSINKSY LLP**
Donald E. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com
etripodi@zlk.com

*Counsel for Plaintiff James Morgan*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES MORGAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RELYPSA, INC., DANIEL K. SPIEGELMAN, JOHN P. BUTLER, PAUL J. HASTINGS, KENNETH J. HILLAN, DAVID W.J. MCGIRR, JOHN A. ORWIN, THOMAS J. SCHUETZ, and HELEN TORLEY<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>CLASS ACTION<br><br>DEMAND FOR JURY TRIAL |

**CLASS ACTION COMPLAINT**

Plaintiff James Morgan ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1. This is a class action brought by Plaintiff on behalf of himself and the other public stockholders of Relypsa Inc. ("Relypsa" or the "Company"), other than Defendants (defined below) and their affiliates, against Relypsa and the members of the board of Relypsa (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger between Relypsa and Galenica AG and Vifor Pharma USA Inc. ("Vifor" or "Merger Sub," and collectively with Galenica AG, "Galenica").

2. Under the terms of the Agreement and Plan of Merger (the "Merger Agreement") dated July 20, 2016, Merger Sub would commence a tender offer (the "Offer") to purchase Relypsa for $32.00 per share in cash ("Offer Price"), or a total of approximately $1.53 billion (the "Proposed Transaction"). Pursuant to the terms of the Merger Agreement, Merger Sub will merge with and into Relypsa, and Relypsa will survive the merger as a wholly owned subsidiary of Galenica. On August 4, 2016, Galenica commenced the Offer, which is set to expire on August 31, 2016.

3. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Recommendation Statement pursuant to Section 14(a) of the Securities Exchange Act of 1934 (the "Recommendation Statement") to be filed on Schedule 14D-9 with the SEC on August 4, 2016 and amended on August 17, 2016. The Recommendation Statement recommends that Relypsa stockholders accept the Offer and tender their shares to Galenica. Specifically, the Recommendation Statement contains materially

incomplete and misleading information by failing to disclose certain information regarding: (i) the sale process leading up to the Proposed Transaction, including certain conflicts of interest; (ii) the financial analyses performed by Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA") and Centerview Partners LLC ("Centerview"); and (iii) a fair summary of the basis for the assumptions underlying Relypsa's financial projections.

4. As described in more detail below, given Relypsa's recent strong performance and its future growth prospects, the Offer Price is inadequate and undervalues the Company. Indeed, Galenica expects to reap tremendous value from the Proposed Transaction, as it has the ability to spin off its Vifor Pharma unit which already owns the rights to sell Relypsa's key drug, Veltassa, outside the United States.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from closing the Offer and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Relypsa's stockholders before the expiration of the Offer, currently set for August 31, 2016, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Relypsa maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, an owner of Relypsa common shares and has held such shares since prior to the wrongs complained of herein. Plaintiff is a citizen of the state of Florida.

10. Defendant Relypsa is a corporation organized and existing under the laws of the State of Delaware. The Company's principal corporate offices are located at 100 Cardinal Way, Redwood City, California 94063. Relypsa is a biopharmaceutical company focused on the discovery, development and commercialization of polymeric medicines for patients with conditions that are often overlooked and undertreated and can be addressed in the gastrointestinal tract. Relypsa common stock is listed on the NASDAQ Global Market under the ticker symbol "RLYP." Relypsa is named as a defendant herein solely for the purpose of providing full and complete relief.

11. Individual Defendant Daniel K. Spiegelman ("Spiegelman") is and at all material times was a member of the Company's Board.

12. Individual Defendant John P. Butler ("Butler") is and at all material times was a member of the Company's Board.

13. Individual Defendant Paul J. Hastings ("Hastings") is and at all material times was a member of the Company's Board.

14. Individual Defendant Kenneth J. Hillan ("Hillan") is and at all material times was a member of the Company's Board.

15. Individual Defendant David W.J. McGirr ("McGirr") is and at all material times was a member of the Company's Board.

16. Individual Defendant John A. Orwin ("Orwin") is the Chief Executive Officer of the Company and is and at all material times was a member of the Company's Board.

17. Individual Defendant Thomas J. Schuetz ("Schuetz") is and at all material times was a member of the Company's Board.

18. Individual Defendant Helen Torley ("Torley") is and at all material times was a member of the Company's Board.

19. The defendants identified in paragraphs 9-18 are collectively referred to as the "Defendants," the defendants identified in paragraphs 11-18 are collectively referred to as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Relypsa common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

21. This action is properly maintainable as a class action for the following reasons:

(a) The Class is so numerous that joinder of all members is impracticable. According to the Recommendation Statement, as of August 1, 2016, there were 44,882,597 shares of Relypsa common stock issued and outstanding. The holders of these shares are believed to be geographically dispersed through the United States;

(b) There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members. The common questions include, *inter alia*, the following:

i. Whether Defendants violated Section 14(a) and Section 20(a) of the 1934 Act and SEC Rule 14a-9 by preparing, reviewing and disseminating a false and misleading Recommendation Statement; and

ii. Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated as presently anticipated.

(c) Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

(d) Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e) The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f) Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**Company Background and its Poise for Growth**

21. Founded in October 2007, Relypsa completed its initial public offering in November 2013. On December 15, 2014, the Company's first drug, Veltassa (patiromer) was accepted as a new drug application ("NDA") by the U.S. Food and Drug Administration ("FDA"). In the press release announcing the FDA's acceptance of an NDA for Veltassa, Defendant Orwin stated:

> Acceptance of our NDA is a significant milestone that triggers greater intensification of our steps toward commercial readiness. If approved, we believe Patiromer FOS may be the first new therapeutic innovation available to treat patients with hyperkalemia in both acute and chronic settings in over 50 years. We also believe there is a significant unmet medical need for patients, particularly as it relates to chronic therapy, and we are planning for broad access to the drug. Based on the robust data which demonstrated the early onset of action and favorable safety profile for up to one year, we believe that Patiromer FOS, if approved, will become an important new treatment option for patients with hyperkalemia.

22. In August 2015, Galenica acquired an exclusive partnership to commercialize Veltassa in Europe. Under the terms of a licensing agreement, Relypsa received an upfront cash payment of $40 million and became eligible to receive payments of up to $125 million upon achieving certain regulatory based milestones. Additionally, Relypsa received a tiered double-digit royalty on net sales of Veltassa in licenses territories.

23. Then, on October 21, 2015, the FDA approved Veltassa for oral suspension for the treatment of hyperkalemia, which is a life threatening condition defined as abnormally elevated levels of potassium in the blood. Veltassa is a non-absorbed, high capacity potassium binding polymer with a well-established mode of action. In the Company's clinical trials, Veltassa met its efficacy endpoints, reducing serum potassium, or potassium in the blood, to target levels and sustaining potassium in the desired range and was well tolerated for up to 52 weeks. Veltassa is the first new drug approved in the United States to treat hyperkalemia in more than 50 years.

24. In the press release announcing Veltassa's approval, Defendant Orwin said, "The FDA approval of Veltassa represents approximately a decade of research by dedicated scientists and doctors, and underscores Relypsa's commitment to developing polymer-based treatments for people with conditions that are often overlooked and undertreated."

25. The Company launched Veltassa in December 2015. Veltassa is available for prescription to patients in the United States through a limited number of specialty pharmacies and specialty distributors.

26. Veltassa was an immediate success. On May 4, 2016, the Company announced its first quarter 2016 financial results. In the press release announcing the first quarter 2016 results, Defendant Orwin commented:

> We made great progress in our first full quarter with Veltassa on the market. We saw solid month-over-month growth of prescriptions, reported early success with payers, including agreements with the two largest pharmacy benefit managers, and have had a positive reception from treating physicians. Yesterday, we announced a debt financing that will support the ongoing U.S. launch of Veltassa. In addition, with the recent submission of an MAA requesting European approval of Veltassa, we are another step closer to bringing Veltassa to patients outside the United States.

27. On May 27, 2016, AstraZeneca plc announced that that FDA issued a Complete Response Letter regarding the NDA for sodium zirconium cyclosilicate ("ZS-9"), a potentially competing drug to Veltassa used to also treat hyperkalemia. The Complete Response Letter provided that the FDA decided that the NDA to market ZS-9 would not be approved in its present form.

28. As of the announcement of the Proposed Transaction, Relypsa has successfully obtained 9 patents associated with Veltassa. The Company is also in the process of evergreening its patent portfolio and currently has at least two pending patent applications.

29. Further, according to *Yahoo! Finance*, Relypsa reported earnings that exceeded analysts' estimates by approximately 13.4% in its most recent financial results. Moreover, the Company's sales revenue is expected to grow approximately 78.5% this year and 118% next year.

**The Flawed Sale Process**

31. Dating all the way back to 2013 and prior to Relypsa's initial public offering, Relypsa snubbed opportunities to explore potential strategic alternatives and even refused to engage Centerview as its financial advisor.

32. The in April 2016, after Reuters reported that Relypsa was "exploring a sale following overtures from a number of potential buyers," a representative of Galenica called Centerview to inquire about the Reuter's article. While Relypsa seemingly had ignored other potential purchasers, Defendant Orwin quickly responded to Galenica's overture and met with Galenica's President and CEO on April 18, 2016. Notably, Defendant Orwin did not meet with any of the other interested potential parties at that time.

33. At an April 25, 2016 meeting of the Board, the Board agreed to allow Galenica to conduct due diligence.

34. On May 18, 2016, Defendant Orwin received a non-binding written proposal by e-mail on behalf of Galenica offering to acquire all of the outstanding shares of the Company at a price of $29.00 per share in cash.

35. The next day, May 19, 2016, Relypsa entered into a confidentiality agreement with Party B. However, the Company continued to disregard other potential bidders.

36. Indeed, despite the Board's discussion of five potential counterparties at its meeting on May 23, 2016, the Board also ignored Party A and three other potential bidders. It was not until May 27, 206 that the Board decided to contact Party A and Party C. Still, the Board continued to ignore two other potential bidders, which it had even identified at the May 23, 2016

meeting. The Board did not contact these two potential bidders at any point during the sale process.

37. Moreover, on May 27, 2016, the Board decided to retain a clearly conflicted financial advisor in Centerview. Interestingly, the Board knew that Centerview had a longstanding relationship with Galenica and was even currently engaged by Galenica to advise on Galenica's planned spinoff of Vifor.

38. As the Board recognized this conflict of interest, the Board also reached out to BofA in search of a second fairness opinion. Thus, it was illogical of the Board to engage a known conflicted financial advisor in addition to another financial advisor.

39. As sale process continued over the next couple of months, the Board continued to allow Centerview, its conflicted financial advisor, to lead the sale process.

40. On June 20, 2016, the Board considered Galenica's revised offer to acquire the Company for $30.25 per share in cash. The Board discussed that an increased offer closer to $34.00 per share would garner more support from the Board.

41. However, on July 20, 2016, the Board agreed to Galenica's unreasonably low offer of $32.00 per share in cash.

**The Proposed Transaction Offers Inadequate Consideration to Relypsa Shareholders**

42. On July 21, 2016, Relypsa and Galenica issued a joint press release announcing the Proposed Transaction. Subsequently, on August 4, 2016, Galenica commenced the Offer to acquire Relypsa for $32.00 per share in cash, currently set to expire on August 30, 2016.

43. The Offer Price that Relypsa shareholders stand to receive does not adequately compensate them for the intrinsic value of Relypsa's assets, particularly Veltassa. The consideration of $32.00 per share in cash grossly undervalues Relypsa.

44. According to *Yahoo! Finance*, at least one analyst has set a price target for the Company of $51.00 per share, nearly 60% higher than the Offer Price. Further, the average analyst price target is $35.50 per share, a solid 11% higher than the Offer Price.

45. Even the Company's own financial advisors have indicated a potentially much higher price tag for the Company than that offered by the Proposed Transaction. In its Discounted Cash Flow Analysis ("DCF Analysis"), Centerview derived an implied value for Relypsa shares as high as $43.20. In BofA's DCF Analysis, BofA derived an implied value for the Company as high as $44.30.

46. Additionally, the Offer Price fails to adequately compensate Relypsa's shareholders for the potential value of Relypsa to Galenica. In the July 21, 2016 press release announcing the Proposed Transaction, Etienne Jornod, executive chairman of Galenica, stated:

> The combination of Vifor Pharma and Relypsa is an important step towards achieving our goal of building a world-leading specialty pharmaceutical company focused on nephrology, cardiology and gastroenterology medicines. This acquisition will give Vifor Pharma direct access to the key U.S. market, enabling us to maximize the potential of our compelling product portfolio and enhancing our growing attraction as an international partner of choice. This transaction demonstrates the commitment of the Galenica Board of Directors to achieve the separation of Vifor Pharma and Galenica Santé, with both businesses in the strongest possible position. We look forward to welcoming Relypsa to Vifor Pharma.

**<u>The Materially Incomplete and Misleading Recommendation Statement</u>**

47. Defendants have failed to provide stockholders with material information necessary for an informed on whether to tender their shares in favor of the Proposed Transaction. It is critical that stockholders receive complete and accurate information regarding the Proposed Transaction prior to deciding whether to tender their Relypsa shares. The Recommendation Statement, which recommends that the Company's stockholders tender their shares in favor of the

Proposed Transaction, misrepresents and/or omits material information in violation of Sections 14(a) and 20(a) of the Exchange Act.

48. With regard to the work performed by Centerview for Galenica, the Recommendation Statement only states "that any fee payable to Centerview pursuant to its engagement by Galenica in connection with a separation of Vifor Pharma was for a fixed amount and not dependent upon or affected by an acquisition of Relypsa by Galenica" as the Recommendation Statement goes on to misleadingly describe the Vifor spinoff as an "unrelated financial advisory matter[]." Further, the Recommendation Statement vaguely provides that "Centerview is entitled to receive fees totaling as much as CHF 8.5 million for its prior work and ongoing work for [Galenica]." Relypsa shareholders are entitled to know if Centerview's fee is affected in any way on the success of the Vifor spinoff. This information is material because it will allow the Company's shareholders to adequately assess Centerview's conflicts of interest as the Proposed Transaction will better enable Galenica to spinoff Vifor.

49. Additionally, the Recommendation Statement omits that Centerview has had a 10 year relationship with Galenica. Furthering Centerview's conflicts, Centerview has provided advice to Galenica regarding potential acquisition targets. While the Recommendation Statement does state that Centerview provided advice to Galenica related to "potential future acquisitions by Galenica" and that Centerview was "not representing Galenica in connection with a potential acquisition of Relypsa or any related matters and that Centerview had information barriers in place with respect to its separate Relypsa and Galenica teams," that does not mean that Centerview did not provide advice related to an acquisition of Relypsa or an alternative thereto for which it was not formally engaged. Therefore, the Recommendation Statement was required to disclose to shareholders whether Centerview provided any advice to Galenica for which it was not formally

engaged related to an acquisition of Relypsa or any alternative thereto. Without this information the Recommendation Statement's disclosures related to Centerview's conflicts of interest are rendered materially false and misleading.

50. Similarly, Relypsa shareholders are also entitled to know whether Centerview used any information or provided any advice related to the proposed Relypsa transaction in connection with its advice related to Galenica's planned Vifor Spinoff. This information is material because it concerns whether Centerview has an improper conflict of interest or misappropriated confidential information and is necessary to ensure the Recommendation Statement's disclosures related to Centerview's conflicts of interest are rendered materially false and misleading.

51. Further, the Recommendation Statement does not disclose whether any representative of Centerview, was currently or previously providing advice to Galenica. This information is material because it relates to the extent of Centerview's conflict of interest and is necessary to ensure the Recommendation Statement's disclosures related to Centerview's conflicts of interest are rendered materially false and misleading.

52. With respect to other potential conflicts of interest, the Recommendation Statement provides the following:

> On May 22, 2016, John Butler, a member of the Relypsa Board, delivered an e-mail to Mr. Spiegelman, Mr. Orwin and Ronald Krasnow, Senior Vice President and General Counsel of Relypsa, stating that, at that time, Mr. Butler intended to recuse himself from the meeting of the Relypsa Board on the following day and any future discussions to the extent they related to Galenica's proposal to acquire Relypsa or any related transaction process.

However, the Recommendation Statement fails to explain why Mr. Butler recused himself and whether he believed he may have a conflict of interest in connection with the Proposed Transaction. Therefore, this information is necessary to ensure the statements related to Mr. Butler's recusal are not false and misleading.

53. While page 45 of the Recommendation Statement contains a summary of BofA's DCF Analysis, including a definition of unlevered free cash flows used by BofA and makes it clear that BofA did not treat stock-based compensation as a cash expense, the summary of Centerview's DCF Analysis does not disclose whether Centerview reduced Relypsa's value by treating stock-based compensation as a cash expense. This disclosure is necessary to ensure stockholders or not mislead by the value resulting from BofA's DCF Analysis.

54. Pages 48 through 62 of the Recommendation Statement provide a summary of Relypsa's projections, which is woefully inadequate because it does not provide stockholders a fair summary of the reasons for certain unrealistic assumptions in each of the projection sets. For example, each of the projection sets assumes the Company will tank after exclusivity for its drug Veltassa expires in 2030. However, the Recommendation Statement does not provide shareholders with any information as to why the Company would not benefit from the evergreening of its patent portfolio. As mentioned previously, the Company appears to currently be in the process of evergreening its patent portfolio as it has at least two pending patent applications. In addition, all of the projections assume Relypsa will incur $835 million in research and development ("R&D") costs, but at the same time project for no benefits from that cost. Thus, the Recommendation Statement should explain why the Company is incurring R&D costs and not incurring any benefits from the R&D. If the Company does not intend to spend R&D money on evergreening its patent portfolio and attempting to create new drugs, those expenses should not be included in the projections, which would result in an increase in the Company's future value. Therefore, shareholders are entitled to a fair summary of the basis for this illogical assumption.

55. Further, the projections ignore the possibility that a generic drug manufacturer might not be able to determine the process by which Relypsa manufactures Veltassa and therefore

not have the ability to obtain approval through an Abbreviated NDA with the FDA, which would have the effect of essentially extending the exclusivity period as a generic manufacturer works through a slower drug approval process. Therefore, Relypsa shareholders are entitled to a fair summary of the basis for management's assumption that this would not occur. Moreover, each of the projection sets assumes the Company will incur in excess of $13 million in annual stock-based compensation expense between 2030 and 3032 (which was expected to increase each year). However, the projections also assume that during those years the Company would be tanking. Accordingly, Defendants should explain why stock-based compensation expense is increasing at a time when the Company's stock would in theory be dropping in value, causing all or some of the stock options to be underwater and therefore worthless. Thus, without a fair summary of the illogical assumptions in Relypsa's projections stockholders will be misled regarding the weight to afford Relypsa's projections.

56. Without this material information, stockholders cannot make an informed decision whether or not to tender their shares, and have been harmed thereby.

57. Defendants failure to provide Relypsa's shareholders with the foregoing material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder. The Individual Defendants were aware of their duty to disclose this information. The material information described above that was omitted from the Recommendation Statement takes on actual significance in the minds of Relypsa's shareholders in reaching their decision whether to tender their shares in favor of the Proposed Transaction. Absent disclosure of this material information prior to the closing of the Offer on August 30, 2016, Plaintiff and the other members of the Class will be unable to make an informed decision

about whether to tender their shares and are thus threatened with irreparable harm for which damages are not an adequate remedy.

**Defendants Knew or Negligently Disregarded that the Recommendation Statement Omits Material Information**

58. The Individual Defendants knew or negligently disregarded that the Recommendation Statement omits material information concerning the Proposed Transaction and/or contains the materially incomplete and misleading information discussed above.

59. Specifically, the Individual Defendants undoubtedly reviewed the contents of the Recommendation Statement before it was filed with the SEC. Indeed, the Individual Defendants knew or should have known that the Recommendation Statement contains misleading partial disclosures concerning the potential conflicts of interest of Centerview, and the underlying assumptions and the basis for such assumptions underlying the financial analyses performed by BofA and Centerview and the management-prepared financial projections for Relypsa.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

60. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61. Defendants have issued the Recommendation Statement with the intention of soliciting stockholder support for the Proposed Transaction.

62. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any

material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

63. Specifically, the Recommendation Statement violates Section 14(a) and Rule 14a-9 because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Recommendation Statement is materially misleading and omitted material facts that are necessary to render the statements that are made non-misleading.

64. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth.

65. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their right to make a fully informed decision on whether to tender their shares in favor of the Proposed Transaction.

66. Plaintiff and the Class have no adequate remedy at law.

**COUNT II**

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

67. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

68. The Individual Defendants acted as controlling persons of Relypsa within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Relypsa, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control

and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

69. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

70. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Recommendation Statement.

71. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

72. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

73. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

74. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Declaring that the Recommendation Statement is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

C. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Recommendation Statement;

D. To the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff and the members of the Class rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

F. Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, and any appropriate state law remedies; and

G. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: August 19, 2016

Respectfully submitted

**LEVI & KORSINSKY LLP**

By: */s/ Adam C. McCall*
Adam C. McCall (SBN 302130)
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Telephone: (213) 985-7290
Facsimile: (202) 333-2121
amccall@zlk.com

*Attorney for Plaintiff James Morgan*

**LEVI & KORSINSKY LLP**
Donald E. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com
etripodi@zlk.com

*Attorney for Plaintiff*